Filed 2/27/15  P. v. Ruiz CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JOSE GONZALEZ RUIZ,<br><br>    Defendant and Appellant. | B251264<br><br>(Los Angeles County<br>Super. Ct. No. PA075506)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING**<br><br>**[No Change in Judgment]** |

THE COURT:

It is ordered that the opinion filed herein on February 4, 2015, be modified as follows:

1.      Page 4, first paragraph, modify the eighth sentence, which begins, "The children were sent . . ." to read as follows:  The children were sent to the room occupied by A.'s sons, and Esmeralda slept there also.

2.      Page 4, second paragraph, modify the third sentence, which begins, "They said . . ." to read:  One of them said "that this had already occurred in the past to another one of my cousins."

3.      On page 5, second full paragraph, after the fifth sentence ending in ". . . good memory," add the following sentence:  Heaven later said she "thought that [Esmeralda] was—me and her were, a little bit, in the closet fixing the stuff."

4.      Page 12, third full paragraph, modify the sentence beginning, "B., age 8, testified . . ." to read as follows:  B., age 8, testified that the touching occurred while she and Vanessa were sitting down, not while the spider game was being played with B. reclined face down over defendant's knee (as Esmeralda stated), and that she and Vanessa were touched on the same day.

This modification does not effect a change in judgment.

Appellant's petition for rehearing is denied.

Filed 2/4/15  P. v. Ruiz CA2/2 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B251264 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA075506) |
| v. | |
| JOSE GONZALEZ RUIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dalila C. Lyons, Judge.  Modified and affirmed with directions.

Tracy J. Dressner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, Alene M. Games and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Jose Gonzalez Ruiz of one count of committing a lewd act upon a child in violation of Penal Code section 288, subdivision (a) (count 2).[1] The trial court sentenced defendant to the high term of eight years in state prison.

Defendant appeals on the grounds that: (1) the trial court erred when it failed to instruct the jury sua sponte with a unanimity instruction; (2) the evidence was insufficient to prove the elements of section 288, subdivision (a); (3) the trial court erred in barring the defense from cross-examining a primary prosecution witness on an issue related to the witness's perceptions and bias; and (4) the trial court erred in imposing a $1,000 fine for child abuse prevention.

## FACTS

**Prosecution Evidence**

Defendant was part of a large extended family, and he lived with several family members on Ledeen Drive in Lakeview Terrace.[2] In addition to defendant and his mother, the Ledeen Drive residence was occupied by defendant's sister, Esther; Esther's son, Angel (also called Enriquito); defendant's brother, A.; A.'s wife, Martha; and A.'s and Martha's three male children, R., Stephen, and Brandon.[3]

Defendant had a sister named Celia who died in July 2012. Celia's daughter, Esmeralda, came to California from Texas to spend time with her dying mother, and A. and Martha invited her to stay at the Ledeen Drive home. Esmeralda moved into the home with her three children: Andrew (also called Marcos), Heaven, and B. (also called D. B.), who was the named victim in count 1.[4]

---

[1] All further references to statutes are to the Penal Code unless stated otherwise.

[2] Defendant's opening brief provides a partial family tree on page 4.

[3] We use first names only to avoid confusion, since many of the persons involved share a last name.

[4] The jury could not reach a verdict in count 1, which charged defendant with committing a lewd act upon B. Count 1 was dismissed on the prosecutor's motion.

Defendant's sister Esther had a second son named Francisco who lived elsewhere with his wife, Griselda, and two daughters, Vanessa and Emily. Vanessa, the named victim in count 2, was four years old at the time of trial. Francisco or his wife would take their daughters to the Ledeen Drive home so that Esther would watch them during the day. Defendant was known as Padre Pepe to his nieces and nephews and their children.

Esmeralda and her children at first slept in the living room of the Ledeen Drive home. Esmeralda testified that she would awaken and see defendant staring at her and her children during the night. She asked Esther if she and her children could move into the room where Esther and her mother, Maria, slept. Even when Esmeralda began sleeping in Esther's bedroom, defendant continued to stare at them as they slept.

Defendant had candy in his room that he gave to the children in the house. He also had a toy truck in his room and a box of nutrition bars. According to Esther, she and defendant are diabetic and they both kept candy for the occasions when their sugar level dropped. Defendant kept the nutrition bars for the two of them to eat when taking their medication.

Several members of the family testified that the family had played a game "for generations" called "the spider game." In this game, a child would lie face down upon someone's knees—usually an adult—and another child would poke this child in the back. The child lying upon the adult's knees would have to guess who had poked him. A song about a spider was sung by the adult during the game.

Esmeralda testified that on the evening of November 8, 2012, she was washing dishes while defendant, B., Emily, and Vanessa were in the living room. Heaven was in a first-floor bedroom with Esmeralda's grandmother. Esmeralda could hear the voices of the people in the living room. Defendant was singing the spider song and the girls were giggling. At one point, everything became quiet, and Esmeralda went to the door of the living room to see what was going on. Esmeralda testified that she saw defendant with his hand on B.'s buttocks under her clothing. He was rubbing the child's buttocks and she believed she saw him poke her somewhere in the buttocks area.

3

Esmeralda immediately screamed, "B.!" and B. ran over to Esmeralda. Esmeralda noticed that B.'s pants were "completely undone." Esmeralda hugged B. and began to cry. She asked B. what was happening, and B. said she did not want to talk about it. Esmeralda said she called out to her other kids and went up to the room occupied by A. and Martha. She told them what she had seen and they were "not in surprise." A. got out of bed and hugged her. The children were sent to the room occupied by A.'s sons, and Esmeralda slept in Martha's and A.'s room. The following day, Esmeralda moved with her children to a friend's house "because her kids were in a danger area."

Esmeralda said that A. telephoned her and told her not to say anything because it would cause his mother's death if defendant were sent to jail. Other relatives called and told her not to report it. They said "that this had already occurred in the past to another one of my cousins." Esmeralda did not report it immediately because she was afraid her grandmother would have a heart attack and that B. would not cooperate, since she did not want to talk about it.

One day, B. asked Esmeralda if they could talk about it. She said, "He was touching me. He told me not to go anywhere. He told me not to say anything, and I was scared." On that day, December 10, 2012, Esmeralda took B. to a police station. B. told Esmeralda that defendant was also hurting Vanessa and Emily, and Esmeralda reported that information as well. Esmeralda also told her cousin Francisco what B. had said, but he did not believe her. The family members stopped talking to Esmeralda after she reported the incident to police.

B. was eight years old at the time of trial. She testified that while she was living with her Uncle Jose (defendant), something happened. She was sitting on the couch with Vanessa and defendant. No one else was in the living room—only defendant, B., and Vanessa. Defendant was singing her a song but then he touched her somewhere he should not have. This was during the spider game. B. pointed to a diagram of a female child and to the spot where defendant touched her (People's exhibit 8). The prosecutor gave B. a crayon and she circled the spot, which was the vaginal area. B. said defendant touched her there under her clothes but over her underwear. She felt uncomfortable. She

4

tried to get up but defendant said, "Don't leave." He touched her before her mother came in. When he did it again, her mother saw.

B. testified that defendant had never done anything else to make her feel uncomfortable, although she did see him look at her, her mother, and her sister while they slept. B. also saw defendant touch Vanessa in a way that was not right. B. circled the area on a diagram (People's exhibit 9). He touched Vanessa before he touched B. and on the same day.

Heaven, B.'s sister, was 11 years old at the time of trial. She testified that defendant would tell the little girls to go up to his room and he would give them candy. Heaven saw defendant pick up B. by scooping her up between her legs. Defendant would come inside their room and watch them sleeping. On the day her mother was washing dishes, Heaven did not remember where she was because she does not have a good memory. Her mother saw defendant rubbing. When asked if it was something she herself saw, Heaven said, "Yes." Defendant was rubbing her sister's back in the lower back region. His fingers were inside her clothes. Heaven's mother called to B. and they went upstairs with their Aunt Martha. Heaven later added that B. was lying with her stomach on defendant's knees. Heaven saw defendant play the touching game with Vanessa on a different day, but he was touching her back and not her "butt."

Vanessa, who was four years old at the time of trial, testified that defendant gave her candy in his room. When shown a diagram of a little girl and asked if defendant ever touched her anywhere that she could see on the picture (People's exhibit 14), Vanessa said, "No." When shown People's exhibit 9 with the blue circle and asked if defendant touched her in the area of the blue circle, Vanessa said, "Yes." When asked if it was in defendant's room or in a different room, she said it was in defendant's room. She told her mother and a nurse about it.

Francisco's wife, Griselda, testified that defendant was like a father to her husband. She was surprised when she heard Esmeralda's allegations against defendant because she knew he would not do something like that. Her husband told her Esmeralda was concerned that Vanessa might have been touched by defendant. Griselda was in the

5

room when Vanessa was examined by a nurse.  "They" kept on asking Vanessa if someone ever touched her private parts.  They asked her if she would not let someone touch her private part, who would it be, and Vanessa said, "Pepe."  Griselda was sure Vanessa said it by then because she was confused about the questions.  Griselda testified that Vanessa did not say defendant touched her, she just said she would not let him touch her.

Karen Zambroni worked at the Center for Assault Treatment Services as a forensic interviewer.  On December 18, 2012, she interviewed Esmeralda.  Esmeralda told her that she saw defendant's hand in B.'s pants under her clothing, and she saw him poke B. somewhere under her clothing while B. was leaning over his lap.  She also noticed that B.'s pants were open.  Zambroni interviewed B. on the same day.  B. was very quiet and rarely made eye contact.  Zambroni asked B. if anyone had done something to her that was not right.  B.'s reply was either that she did not know or she did not remember.  Heaven told Zambroni she saw defendant put his hand under B.'s clothing in the butt area and that he did it to Francisco's daughter also.

Maryann Lague was a forensic nurse examiner.  She was not able to perform an examination of B.  B. was very "shut down," had her hair over her face, and refused to remove her clothing. When asked if something had happened to her, she said "Yes."  She said she did not want to talk about it.  When asked to show Lague where it happened, she said that it "happened in the back, and I don't want to talk about it."

On December 20, 2012, Zambroni interviewed Vanessa's parents, Francisco and Griselda.  They said that they had not talked with Vanessa regarding the alleged sexual abuse. Zambroni interviewed Vanessa the same day.  Vanessa said defendant offered her candy, but she made no disclosures about any sexual abuse or touching.  Vanessa was willing to remove her clothing and undergo an examination by Lague.  During the examination, Vanessa placed her hands over her genitalia and moved back.  When Lague asked if someone had hurt her there, Vanessa at first said, "No," but then she said, "Yes." When asked who it was, Vanessa said it was Padre Pepe.  She said he did it with his

6

hand.  He touched her "pee pee."  When asked if it was one time or more than one time, she said it was more than one time.

Los Angeles police detective Monica McPartland investigated defendant's case.  Defendant gave permission to search his room.  The detective noticed breakfast bars in his room.  Detective McPartland was present during an interview with Vanessa at the district attorney's office.  Vanessa told the district attorney that defendant had touched her on her private part, referring to the area between her legs.  McPartland explained the grooming process used by people trying to gain access to children.  They sometimes offer them candy and show them pictures.

**Defense Evidence**

A.'s wife, Martha, testified that on the night of the November 8, 2012 incident, Esmeralda entered Martha's room and said something had happened in the living room.  She said she saw defendant touching her daughter.  When Martha asked why Esmeralda had done nothing, Esmeralda answered, "It's that I cannot do anything because I'm not sure about what I saw."  She also said, "My eyes could have lied to me."  Esmeralda said she could not "say something that I have not seen" and that is why she would not call the police.

A. testified that he did not find out about the incident until the next day when his wife told him of the allegation.  He did not think it was very important.  He acknowledged that defendant had nutrition bars and candy.  Defendant would ask A. permission to give candy to the kids in the house after they completed their homework.  A. acknowledged he was closer to his brother than to Esmeralda.  According to A., Esmeralda is a person who has lied all of her life.

A. and Martha's 11-year-old son, Steven, was familiar with the spider game but said he and the others do not play it a lot.  He remembered the evening when he was playing the game with B., and her mother came and called her.  Esmeralda said that she saw defendant "touch B. in the booty."  Steven saw Esmeralda take B. upstairs and begin screaming at B. and asking if defendant had touched her.  At first B. said "no" and Esmeralda got angrier and hit B.  Vanessa and Emily were in the living room also when

7

the game was being played, but only Vanessa played. Steven played the game with defendant before B. did. Steven did not see defendant put his hands into B.'s booty. Steven noticed that the button on B.'s pants was broken. Steven said that defendant would not give the children candy in his room. He gave it to them downstairs after he made sure they had behaved and done all of their homework.

Esther testified that defendant was loving and caring. After Esmeralda had been in the Ledeen Drive home a short time, she asked to have her own room. Esther did not have a free room, however, and she began to have problems with Esmeralda. Esther asked Esmeralda to leave the house. Esmeralda had many conflicts. For example, Esmeralda told her mother she had cancer, which was a lie. When Esmeralda moved out, she told Esther it was because she wanted a room for herself. She did not mention an incident where she believed defendant was touching B. inappropriately.

Esther said the spider game had always been played in their house, and Esther herself had played the game with B. Esther would babysit Vanessa and Emily two to three times a week. They would sometimes play with defendant. He would put an educational game on the television. He would give the kids candy as a prize because they did their homework or behaved well. Esther offered to help defendant go to Mexico when she learned about the allegations Esmeralda was making against him.

Francisco testified that defendant was a father figure to him. One evening he witnessed defendant playing the spider game with Steven, Vanessa, and B. He did not see any "foul play" or anything whatsoever. He, his wife, and his daughters then went home. Francisco had seen defendant carrying his daughters in a normal way, on his forearm. Francisco would not lie and deny a violation of his daughter by defendant if he knew it had occurred.

Nadim Karim is a licensed clinical psychologist who serves on a panel of experts in Los Angeles County for sexual abuse cases. He evaluates whether an individual is sexually deviant. He interviewed defendant on two occasions. Using various tests and tools, he determined that defendant does not present the clinical characteristics of a pedophile. He does not meet the criteria for someone who has a sexual disorder,

pedophilia, or paraphilia. Defendant's most apparent personality trait was that he was avoidant and not the type of person to act out or inflict himself on another individual. Karim agreed that in the vast majority of cases, sexual abuse against minors is committed by a family member or another person the child knows. Karim did not believe that a pedophile would act out when he knew the minor's mother or someone else could walk in at any time.

**Rebuttal Evidence**

Detective McPartland testified that A. told her that Esmeralda—not his wife—told him about the improper touching. Francisco told Detective McPartland that he had not spoken to his children about the allegation, and he continued to take the girls over to the house for Esther to watch. Detective McPartland stated that it was common for parents not to report allegations of sexual misconduct because of disbelief, shame, and fear. It is also common for children to delay reporting sexual abuse.

**DISCUSSION**

## I. Unanimity Instruction

### A. *Defendant's Argument*

Defendant asserts that the prosecution witnesses did not focus on one identifiable criminal act on or about a specific date with respect to Vanessa. Instead, there was vague testimony about defendant touching Vanessa without reference to any time period. Since the jury needed to unanimously find that defendant committed a specific act at a reasonably specific time, and since the prosecution did not elect a specific act, the trial court erred in not giving sua sponte a unanimity instruction to the jury.[5]

---

[5]     Since the information alleged that the charged event occurred on a single date, the standard instruction for unanimity, CALCRIM No. 3500, would be given as follows in this case: "The defendant is charged with _____ [in Count ___]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

## B. Relevant Authority

A unanimity instruction typically applies to acts that could have been charged as separate offenses. (*People v. Edwards* (1991) 54 Cal.3d 787, 824)  Where the accusatory pleading charges a single offense, and the evidence shows the defendant committed more than one act that could constitute that offense, the jury must be instructed that the defendant can be found guilty only if the jurors unanimously agree the defendant committed the same, specific act constituting the crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534 .)  The unanimity requirement is intended to eliminate the danger that the defendant will be convicted even though there is no single offense that all jurors agree he or she committed. (*Russo*, at p. 1132.)

Where required, a unanimity instruction must be given sua sponte. (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 274-275; *People v. Melhado*, *supra*, 60 Cal.App.4th at p. 1534.)  "Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that . . . is . . . predominantly legal.  As such, it should be examined without deference." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)  Assuming a unanimity instruction was required, failure to give the instruction is "'harmless when disagreement by the jury is not reasonably probable.'" (*People v. Jenkins* (1994) 29 Cal.App.4th 287, 299.)

## C. Relevant Evidence, Argument, and Instructions

The information charged defendant with committing the crime of lewd act upon a child, Vanessa G., *on or about November 8, 2012*.  On direct examination of B., the prosecutor asked her if she had ever seen defendant touch Vanessa in a way that was not "right," and B. said, "Yes."  B. said defendant touched Vanessa on top of her clothes on the same day that defendant touched B.

When Vanessa was shown the picture with a blue circle (People's exhibit 9) and asked if defendant ever touched her in that area, she said, "Yes."  She said it happened in defendant's room.  She told her mother and a nurse about it.  Vanessa said she never played a game with defendant and B., and she never played the spider game.

10

Lague, the forensic nurse, asked Vanessa if someone had hurt her in the genital area, and she at first said, "No." Then she said, "Yes," and the nurse asked who it was. Vanessa said, "Padre Pepe." When asked how, she said he touched her pee pee more than one time. Detective McPartland testified that, during an interview in the district attorney's office, Vanessa said that Padre Pepe had touched her on her private part, in the vaginal area.

During her argument, the prosecutor told the jury that B. had seen defendant touch Vanessa's private part "around the vaginal area" on November 8, 2012, the same day B. was touched by defendant. The prosecutor reminded the jury that Vanessa said that defendant touched her in the vaginal area when shown a diagram of a girl with a blue circle around that area. The prosecutor added that Vanessa said this happened in the bedroom. The prosecutor stated, "[Y]ou heard Vanessa's testimony about the touching. You heard B.'s testimony that she saw the defendant touch Vanessa," referring to the November 8 occurrence. The prosecutor also referred to Vanessa's statements to the nurse, herself, and Detective McPartland that defendant had touched her.

CALCRIM NO. 1110 told the jury that, in order to find the defendant guilty, the People had to prove that (1) the defendant willfully touched any part of a child's body either on the bare skin or through the clothing; (2) the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; and (3) the child was under the age of 14 years at the time of the act.

CALCRIM No. 207 instructed the jury that, "It is alleged that the crime occurred on or about November 8, 2012. The People are not required to prove that the crime took place exactly on that day but only that it happened reasonably close to that day."

### D. No Unanimity Instruction Required

The preceding summary of the evidence regarding the offense against Vanessa reveals that no unanimity instruction was required. The focus was on the touching of Vanessa that occurred on or about November 8, 2012. B. indicated that defendant touched Vanessa in the vaginal area, and Vanessa confirmed that defendant touched her there. Although when asked where it occurred, Vanessa said, "inside Padre Pepe's

11

room," there was no further development of a separate incident on a different date, only the one on November 8.

According to Esmeralda, her mother died on July 27, 2012, and she then returned to Texas to pack up and move to Los Angeles with B. and her other children. Therefore, B.'s knowledge of defendant's touching of Vanessa was based on an act or acts that occurred between late August and early November 2012, a period of little more than two months. The trial court repeated the date of the charged offense in the jury instructions stating, "It is alleged that the crime occurred on or about November 8, 2012." (CALCRIM No. 207.) No other date was given for any offense against Vanessa, and the jury was told the People did not need to prove that the crime took place precisely on November 8. (*Ibid*.)

"In deciding whether to give [a unanimity] instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*People v. Russo*, *supra*, 25 Cal.4th at p. 1135.) The evidence in the instant case clearly falls into the second category, and no unanimity instruction was required.

Moreover, the jury was told to consider a child's age and level of cognitive development when evaluating the child's testimony. B., age 8, testified that the touching occurred while she and Vanessa were sitting down, not while the spider game was being played (as Esmeralda stated), and that she and Vanessa were touched on the same day. Vanessa, age 4, testified that defendant touched her in his room and that she never played the spider game with B. and defendant. The jury likely realized that the contradictions between B.'s and Vanessa's testimony could largely be attributed to their ages and stages of development.

Even if we were to conclude that a unanimity instruction was required, we believe any error must be deemed harmless. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576; *People v. Brown* ( 1996) 42 Cal.App.4th 1493, 1500-1501 [failure to give unanimity

instruction reviewed for harmless error].)  Defendant presented a unified defense against all of the incidents contained in the testimony—including the watching of Esmeralda and her children while sleeping and the dispensing of candy as well as the lewd acts—and asserted they either did not occur or they were innocent acts.  Given the circumstances of child witnesses and the uniform defense offered by defendant, which the jury clearly disbelieved, any error was harmless under both *People v. Watson* (1956) 46 Cal.2d 818, 836-837, and *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).  (See *Hernandez*, at p. 578 [applying *Chapman* standard to failure to give unanimity instruction].)  Although the jury concluded the prosecution had not proved the count in which defendant was charged with committing a lewd act upon B., it clearly did not believe defendant's denial that he had never touched Vanessa's vaginal area on or about the date in question, or that if he did so, it was without lewd intent.

## II.  Sufficiency of the Evidence

### A.  Defendant's Argument

Defendant claims the evidence that he touched Vanessa was vague and nonspecific and did not provide the jury with sufficient evidence to find beyond a reasonable doubt that he had the required intent.  He points out that B. was the only witness who placed a date on the act of touching and there was no context provided for any of the acts of vaginal touching.  According to defendant, without context there is no way to gauge the intent of the toucher.

### B.  Relevant Authority

Our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Bolin* (1998) 18 Cal.4th 297, 331.)  "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'"  (*Bolin*, at p. 331.)  The evidence is sufficient to support a conviction if "there is any substantial evidence, contradicted or uncontradicted, which will support it, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to

13

substitute its deductions for those of the jury. It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion." (*People v. Brown* (1984) 150 Cal.App.3d 968, 970.)

### C. Evidence Sufficient

As we have noted, the prosecutor showed Vanessa a drawing of a little girl with a circle in the vaginal area (People's exhibit 9), and asked if defendant had ever touched her in that area. Vanessa said that he had. She said it happened in defendant's room. The forensic nurse testified that Vanessa put her hands over her genitalia at the beginning of the genital examination. The nurse asked Vanessa if someone had hurt her there, and she said "yes" (after first saying "no"). When asked who had done it, Vanessa replied, "Padre Pepe." When asked how he had done it, she said he touched her pee pee. She said it happened more than one time. B. also testified to defendant's touching of Vanessa's vaginal area. Detective McPartland testified that Vanessa told her and the district attorney that Padre Pepe had touched her on her private part, in the vaginal area.

As the jury was instructed, the testimony of only one witness can prove any fact, and intent may be proved by circumstantial evidence. (CALCRIM Nos. 301, 225.) Given the testimony that defendant touched Vanessa's vaginal area when he was alone with her and another young girl while supposedly playing a game, there was sufficient evidence that the touching was done with the intent of appealing to defendant's sexual desires. The jury was also instructed that conviction of a sexual assault crime may be based on the testimony of a complaining witness alone. (CALCRIM NO. 1190.) The jury was cautioned that in evaluating a child's testimony it must consider all the facts surrounding the testimony, including the child's age and level of cognitive development. The jury was told to not automatically reject testimony just because of inconsistencies.

Under these circumstances, there was sufficient evidence of defendant's intent to support his conviction for violating section 288, subdivision (a), and defendant's argument is without merit.

14

## III. Exclusion of Evidence

### A. Defendant's Argument

Defendant contends the trial court prejudicially abused its discretion in barring the defense from questioning Esmeralda about her recent rape and subsequent emotional reactions, since this information might have shed light on her perception of what took place at defendant's home. Defendant argues that his rights under the confrontation clause were violated because he was prohibited from engaging in otherwise appropriate cross-examination designed to show bias on the part of a witness.

### B. Proceedings Below

Before trial, defense counsel sought discovery "relating to the kidnapping of a witness." According to defense counsel, Esmeralda claimed she was kidnapped approximately three months before the molestation incident. She apparently also claimed to have been raped and stated she still suffered "from the symptoms of the incident." Defense counsel asserted that the emotional stability of a witness affects a witness's perception, memory, and recollection of an event and is therefore relevant. The prosecution claimed not to have any documents regarding the rape other than those defense counsel already had. The court denied the motion.

The People subsequently filed a motion to exclude defense counsel from eliciting testimony regarding Esmeralda being the victim of a sexual crime. Defense counsel stated he wanted to elicit testimony from Esmeralda regarding the extent that her recent sexual abuse affected her perception and emotional condition. The prosecutor argued that whether or not Esmeralda was a victim was not relevant to whether she saw what she claimed to have seen in the instant case. Defense counsel asserted that Esmeralda may have been hallucinating when she saw defendant watching her and her daughters sleep, and the stress of a recent rape "goes to the witness's perception," and was a factor for the jury to use in evaluating her credibility The defense position was that "what Esmeralda is alleging she saw is not what she saw." The trial court preliminarily granted the People's motion to exclude the evidence on the grounds that it was irrelevant. The court also found under Evidence Code section 352 that the probative value of the evidence was

15

substantially outweighed by the probability of undue prejudice, confusion, and consumption of time. The court stated the ruling was subject to its review of the transcripts of Esmeralda's interviews wherein she mentioned the sexual assault.

The trial court subsequently considered the transcript of an interview between Esmeralda and a Karen Rodas. After reading aloud the excerpts selected by counsel, the court determined that the new information changed neither its ruling nor the basis for the ruling.

### C. Relevant Authority

All relevant evidence is admissible. (Evid. Code, § 351.) Relevant evidence is all evidence "including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) We review the admission and exclusion of evidence on relevance grounds for abuse of discretion. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123.) Evidence Code section 354 provides that a judgment will not be reversed due to the erroneous exclusion of evidence unless the error resulted in a miscarriage of justice.

The United States Supreme Court has held that a defendant is entitled to a meaningful opportunity to present "a complete defense" (*California v. Trombetta* (1984) 467 U.S. 479, 485), but the right is not unlimited (*United States v. Scheffer* (1998) 523 U.S. 303, 308; *People v. Brown* (2003) 31 Cal.4th 518, 538 [right to confrontation and to cross-examine not absolute]). The California Supreme Court has held that "'[a]s a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense. Courts retain . . . a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice. [Citations.]" (*People v. Cudjo* (1993) 6 Cal.4th 585, 611; see also *People v. Panah* (2005) 35 Cal.4th 395, 483 [a trial court is permitted to curtail cross-examination relating to irrelevant matters and matters falling under section 352]; *People v. Frye* (1998) 18 Cal.4th 894, 946, overruled on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 ["not every

16

restriction on a defendant's desired method of cross-examination is a constitutional violation . . . the trial court retains wide latitude in restricting cross-examination that is . . . confusing of the issues, or of marginal relevance"]; *People v. Jones* (1998) 17 Cal.4th 279, 305.)

### D. No Abuse of Discretion

We cannot say the court abused its discretion or violated defendant's right to due process when it ruled that the probative value of the evidence regarding a sexual assault suffered by Esmeralda was outweighed by its prejudicial effect. The circumstances surrounding Esmeralda's revelation of the touching of B. indicate that the evidence in question had little tendency to prove defendant's innocence. Esmeralda was not a witness to the touching of Vanessa. It was Vanessa's testimony and B.'s statement to Esmeralda that provided the evidence for count 2. Therefore, the evidence at issue was not crucial to defendant's theory of defense.

Moreover, defendant was not prevented from arguing the unreliability of Esmeralda's testimony to the jury. He pointed out that Esmeralda told Martha she was not sure of what she saw and that her eyes might be telling her lies. He argued that she lied to police and told them that defendant had gone to prison for rape because she wanted to put him in the worst possible light. He contended that she became angry and smacked B. when B. did not say what Esmeralda wanted to hear. Counsel asserted that Esmeralda needed "to dig the defendant deep" and therefore added more facts as time went on. Thus, the exclusion did not prevent defendant from presenting a defense, and we cannot say it is reasonably probable the jury would have reached a more favorable verdict in the absence of any assumed abuse of discretion by the trial court.

Finally, defendant's constitutional arguments must fail. As noted, we reject defendant's contention that the exclusion of this evidence prevented him from presenting a defense and therefore denied him due process of law. "Although completely excluding evidence of an accused's defense theoretically could rise to [the level of a due process violation], excluding defense evidence on a minor or subsidiary point does not impair an

17

accused's due process right to present a defense." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103; see also *People v. Hawthorne* (1992) 4 Cal.4th 43, 58-59.)

We also conclude that defendant's inability to question Esmeralda about the assault upon her did not deny defendant his right of confrontation and, in any event, was harmless beyond a reasonable doubt. Whether or not Esmeralda suffered the assault could not affect her credibility before the jury any more than it was already affected by her statements to Martha that she was not sure of what she saw with respect to B.

## IV. Restitution Order

At sentencing, the trial court ordered defendant to "pay a $1,000 child abuse prevention restitution fine, pursuant to Penal Code section 294." Defendant contends the trial court erred in imposing the fine, since a conviction for a violation of section 288 does not trigger this fine.

Penal Code section 294, subdivision (b) reads in relevant part: "Upon conviction of any person for a violation of Section 261, 264.1, 285, 286, 288a, or 289 where the violation is with a minor under the age of 14 years, the court may, in addition to any other penalty or restitution fine imposed, order the defendant to pay a restitution fine . . . ." Thus, section 294, by its terms, does not apply to convictions under section 288. Respondent concedes this issue and states the fine was unauthorized and should be stricken.

We agree with defendant and respondent and strike the restitution fine imposed under section 294.

18

## DISPOSITION

The restitution fine imposed under Penal Code section 294 is stricken. In all other respects, the judgment is affirmed. The superior court is to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.